David B. Gordon (DG 0010)
Mitchell Silberberg & Knupp LLP
12 East 49th Street, 30th Floor
New York, New York 10017
(917) 546-7701

*Attorneys for Defendants True Religion*
*Sales, LLC and 513 Broadway Realty, LLC*

Manu Leila Davidson (MD 5119)
Braverman Greenspun, P.C.
110 East 42nd Street, 17th Floor
New York, New York 10017
(212) 682-2900

*Attorneys for Defendant*
*515 Broadway Corp.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KING RANGE, | CASE NO. 16-CV-1016-JMF |
| Plaintiff, | |
| v. | |
| 515 BROADWAY CORP., 513 BROADWAY REALTY, LLC AND DEFENDANT TRUE RELIGION APPAREL, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT OF DEFENDANTS TRUE RELIGION SALES, LLC,
513 BROADWAY REALTY, LLC, AND 515 BROADWAY CORP.**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................. 1

STATEMENT OF UNDISPUTED FACTS ................................. 3

ARGUMENT .............................................................................. 6
   I.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S STATUTORY CLAIMS .................................. 6
      A.   Plaintiff Cannot Establish That Defendants Discriminated Against Him On The Basis Of His Disability In Violation Of The ADA .............. 7
         1.  Defendants Cannot Be Liable Under The ADA Because Removal Of The Architectural Barrier To Accessibility Is Not Readily Achievable And They Have Ensured Access For Wheelchair Users Via An Alternative Method Of Access ............ 8
            a.  The "Readily Achievable" Standard For Barrier Removal Applies ................................................................ 8
            b.  Plaintiff Has Not Met His Burden Of Identifying A "Readily Achievable" Way Of Removing Architectural Barriers To Access ................................... 11
            c.  Defendants Have Complied With The ADA By Providing An Alternative Method Of Access Into The Premises ................................................................... 13
         2.  Defendants Cannot Be Liable Under The ADA Even If The Premises Are Considered Altered ................................................. 14
      B.   Plaintiff Cannot Establish That Defendants Discriminated Against Him On The Basis Of His Disability In Violation Of The NYHRL And NYCRL ......................................................................................... 16
      C.   Plaintiff Cannot Establish That Defendants Discriminated Against Him On The Basis Of His Disability In Violation Of The NYCHRL ...... 17
      D.   Plaintiff Cannot Recover Damages Based On Any Argument That He Did Not Know About The Elevator's Existence, Because He Admits He Would Not Have Used It Under Any Circumstance ........................... 18
      E.   Plaintiff Cannot Avoid Dismissal Based On Any Argument That Defendants Should Be Ordered To Maintain Wheelchair Accessibility Through The Elevator ......................................................................... 20
   II.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S NEGLIGENCE CLAIM ..................................... 22

CONCLUSION .......................................................................... 24

8076483.3/45854-00024

## TABLE OF AUTHORITIES

**Page**

### CASES

*ABN AMRO Verzekeringen BV v. Geologistics Ams., Inc.*,
    485 F.3d 85 (2d Cir. 2007)..................................................................20

*Chen v. St. Beat Sportswear*, Inc.,
    364 F. Supp. 2d 269 (E.D.N.Y. 2005) ...............................................23

*Comm'n on Human Rights v. E&E Bagels, Inc.*,
    2016 WL 1644879 (N.Y.C. Comm. Hum. Rights April 20, 2016) ........21

*CSX Transp., Inc. v. Emjay Envtl. Recycling, Ltd.*,
    629 Fed. Appx. 147 (2d Cir. 2015)........................................................6

*De Brasi v. Plaza Hotel*,
    No. 03-cv-5159, 2005 U.S. Dist. LEXIS 8569 (S.D.N.Y. May 9, 2005) ...............19

*De La Rosa v. 597 Broadway Dev. Corp.*,
    No. 13-cv-7999, 2015 WL 7351540 (S.D.N.Y. Aug. 4, 2015).......................12, 14, 15, 17, 18

*De La Rosa v. Lewis Foods of 42nd St., LLC*,
    124 F.Supp.3d 290 (S.D.N.Y. 2015)....................................................10

*Francis v. Lo-Do Corp.*,
    No. 14-cv-5422 (KBF), 2014 WL 7180091 (S.D.N.Y. Dec. 5, 2014)....................23

*Gathright-Dietrich v. Atlanta Landmarks, Inc.*,
    452 F.3d 1269 (11th Cir. 2006) .............................................................8

*Hicks v. Baines*,
    593 F.3d 159 (2d Cir. 2010)...................................................................7

*Hiller v. County of Suffolk*,
    199 F.R.D. 101 (E.D.N.Y. 2001) .........................................................19

*In re MS Angeln GmbH & Co. KG*,
    10 F. Supp. 3d 424 (S.D.N.Y. 2014).....................................................22

*Joseph v. Thompson*,
    No. 95-cv-4898, 2005 U.S. Dist. LEXIS 39419 (E.D.N.Y. Mar. 23, 2005)..........................19

*Panzica v. Mas-Maz, Inc.*,
    No. 05-2595, 2007 U.S. Dist. LEXIS 42171 (E.D.N.Y. June 11, 2007) .............7, 8, 11, 13, 17

*Perdum v. Forest City Ratner Cos.*,
    No. 11-CV-315 (PKC), 2016 WL 122859 (E.D.N.Y. Mar. 28, 2016) ...............21

# TABLE OF AUTHORITIES

**Page**

*Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alimentari S.P.A.,*
No. 08-CV-2540 (DLI) (RLM), 2015 U.S. Dist. LEXIS 19358
(E.D.N.Y. Feb. 18, 2015) ........................................................................20

*Roberts v. Royal Atlantic Corp.,*
542 F.3d 363 (2d Cir. 2008) .............................................7, 8, 9, 10, 11, 14

*Rodal v. Anesthesia Grp. of Onondaga, P.C.,*
369 F.3d 113 (2d Cir. 2004) ...................................................................17

*Rubens v. Mason,*
527 F.3d 252 (2d Cir. 2008) .....................................................................6

*Sewar v. Gagliardi Bros. Serv.,*
51 N.Y.2d 752, 411 N.E.2d 786, 432 N.Y.S.2d 367 (1980) ....................22

*Stan v. Wal-Mart Stores, Inc.,*
111 F.Supp.2d 119 (N.D.N.Y. 2000) ................................................20, 21

*Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.,*
No. 05-CV-6734T, 2007 U.S. Dist. LEXIS 3616 (W.D.N.Y. Jan. 18, 2007) .........................23

## STATUTES AND REGULATIONS

42 U.S.C.
§ 12181(9) ...............................................................................12, 13
§ 12182(a) ......................................................................................7, 8
§ 12183(a) ..............................................................................8, 10, 15

28 C.F.R.
§ 36.304(d)(3) ........................................................................13, 14
§ 36.305(a) .................................................................................13
§ 36.403(d) .................................................................................10
§ 36.403(e)(1) .............................................................................10
§ 36, Appendix A ......................................................................13
§ 36, Appendix C ......................................................................13

Administrative Code of New York City, § 8-107 ...............................1, 17, 18

New York City Building Code, § 3202.2.2.1 ....................................12, 15, 18

New York Civil Rights Law
§ 40-c .............................................................................1, 16, 17
§ 40-d .............................................................................1, 16, 21

New York Human Rights Law, § 296 ........................................1, 16, 17, 21

Rules of the City of New York, Title 34, § 7-06 ...............................12, 18

iii

## <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

Oᴛʜᴇʀ Aᴜᴛʜᴏʀɪᴛɪᴇs

Americans with Disabilities Act Accessibility Guidelines
§ 4.8.2.................................................................................................................11
§ 4.8.4.................................................................................................................12

Federal Rules of Civil Procedure, Rule 56 ........................................................1, 6, 7

Pursuant to the Court's Order dated June 27, 2016 [D.E. 43], Defendants 515 Broadway Corp. (the "Co-op"), True Religion Sales, LLC, incorrectly named as True Religion Apparel, Inc. ("True Religion"), and 513 Broadway Realty, LLC ("513 Broadway") (collectively, "Defendants") respectfully submit this Memorandum of Law in support of their motion, pursuant to Federal Rule of Civil Procedure 56, for summary judgment in their favor and dismissal of the Complaint of Plaintiff, King Range ("Plaintiff"), in its entirety.

## PRELIMINARY STATEMENT

Plaintiff is a professional litigant who is now bringing his ninth lawsuit in the last three years alleging, *inter alia*, that he has been discriminated against based on disability. The evidence, however, demonstrates that there is no basis for his claims.

Defendants True Religion, 513 Broadway and the Co-op are, respectively, the sublessee, sublessor and owner of retail space located at 513 Broadway, New York, NY (the "Building"). Plaintiff, who uses a wheelchair, maintains that because there are stairs located in front of one of the two entrances to the True Religion store, he has been denied access to the store in alleged violation of Title III of the Americans with Disabilities Act ("ADA"), Section 296 of New York Human Rights Law ("NYHRL"), Sections 40-c and 40-d of the New York Civil Rights Law ("NYCRL"), and Section 8-107 of the Administrative Code of New York City (also known as the New York City Human Rights Law ("NYCHRL")). He also asserts a negligence cause of action, claiming Defendants negligently designed, constructed, repaired and maintained the Building in a manner that has rendered the True Religion store inaccessible to him.

The uncontroverted evidence establishes that this action is well-suited for summary judgment. It is undisputed that Defendants provide access to the True Religion store by making an elevator available for use by wheelchair users, which can be accessed through an entrance that

1

does not require the use of stairs.  Moreover, Plaintiff has not identified any other lawful solution for removing the barrier to accessibility in question.

Under applicable precedent, Plaintiff's claims must be dismissed due to his inability to identify another lawful solution.  The person whom Plaintiff hired to provide an expert report and testimony asserts that a ramp must be installed at the Building by Defendants.  However, the purported expert fails to give any consideration to whether a ramp can lawfully, or even practically, be installed in the first instance.  The reason for this omission is obvious: his recommendation cannot withstand even basic scrutiny. Because the rise from street level to the store is 17 inches, the ADA would require any such ramp to be at least 27 feet in length.  If any such ramp were installed, it would violate New York City law, which would allow a ramp to extend no more than 44 inches from the facade of the Building, block the entire sidewalk in front of the Building, and extend into the street and block traffic.  There is absolutely nothing in the record explaining how Defendants can, or why they should be required to, install a ramp under these circumstances.

Moreover, Plaintiff's claims ignore a critical fact:  through a second entrance located on Broadway, there is an elevator within the Building that enables wheelchair users to access the True Religion store.  Once a wheelchair user presses a buzzer installed on the Building's facade, a True Religion employee opens the second entrance to the Building, which is kept locked for security reasons, and the wheelchair user is able to enter the Building and proceed directly to the elevator, which takes him directly to the inside of the True Religion store.  Accordingly, Defendants have provided an alternative method of access to the store, which is explicitly permitted by the applicable laws governing accessibility.

Plaintiff is fully capable of entering the store via the elevator, should he so choose.  Not only has he not bothered to try to access the True Religion store via the elevator, he has no intention of doing so, insisting, instead, that Defendants succumb to his implausible and unlawful demand that a ramp be installed.

For these reasons, Defendants should be granted summary judgment and all of the Plaintiff's claims should be dismissed.

## STATEMENT OF UNDISPUTED FACTS

The Co-op owns a cooperative building located at 513 Broadway, New York, which houses commercial units on the ground floor of the Building and residential apartments above. Transcript of the Deposition of Diane Hunt ("Hunt Tr."), p. 6;[1] Affidavit of Diane Hunt dated August 25, 2016 ("Hunt Aff."), ¶ 5, Exh. 2.   True Religion operates a retail clothing store located in one of the commercial units, Unit 1-A (the "Premises"), within the Building. Declaration of Marco Arroyo dated August 11, 2016 ("Arroyo Decl."), ¶ 2.   513 Broadway owns the stock and holds the proprietary lease appurtenant to the Premises, which 513 Broadway subleases to True Religion. Jacobi Tr., p. 9; Hunt Aff. ¶ 6, Exhs. 3 and 4.  The Building was constructed and first occupied prior to 1993. Hunt Aff. ¶ 7; *see also* Jacobi Tr., p. 11.  The Building was built in approximately 1880 and converted to a cooperative in approximately 1978 (Hunt Aff. ¶ 7, Exh. 5), and it was conveyed to the Co-op in 1979 (*Id.*, ¶ 7, Exh. 2).

Plaintiff is a wheelchair user who, *inter alia*, purports to be a "tester" of retail establishments for compliance with disability discrimination laws. Complaint ("Cmplt.") ¶¶ 6,

---

[1] Relevant excerpts from the Hunt Tr., as well as the Transcript of the Deposition of Marco Arroyo ("Arroyo Tr."), Transcript of the Deposition of Yaron Jacobi ("Jacobi Tr."), and Transcript of the Deposition of King Range ("Range Tr."), Transcript of  the Deposition of Jimmy Zuehl ("Zuehl Tr.") are contained within Exhibits A, B, C, D and E, respectively, to the accompanying Declaration of David B. Gordon dated September 2, 2016 ("Gordon Decl.").

39.[2]  Within the past three years, Plaintiff has commenced at least eight other separate lawsuits in the Southern District of New York alleging violations of such laws.  *See* Range Tr., pp. 40-41.

In connection with this lawsuit, Plaintiff has identified the front steps leading to one of the two Building entrances as an architectural barrier to entry for wheelchair users. Cmplt., ¶¶ 12-15, 28.  These two steps rise 17 inches from the sidewalk to the door. Report of Jimmy Zuehl submitted by Plaintiff, dated June 6, 2016 ("Zuehl Rpt."), p. 13 (Photo AK and AL), p. 15 (Photo AR).[3]

Although the two steps leading to one entrance to the Premises cannot be traversed by a wheelchair user, there is a second, adjacent entrance to the Premises, in front of which there are no stairs (the "Second Entrance"). Arroyo Decl., ¶ 3.  Through this Second Entrance, wheelchair users can safely access the Premises by proceeding to an elevator that travels directly to the inside of the True Religion store. *Id.*; Hunt Aff. ¶¶ 14-15; Zuehl. Rpt., p. 13 (Photo AK and AL), p. 15 (Photo AR).

Signs installed on the Building's facade and doors alert wheelchair users to this means of access. Arroyo Decl., ¶ 4.  On a post immediately outside the Building, there is (i) a sign that says "True Religion," (ii) beneath which there is second sign bearing the universal symbol for handicap access and stating "Ring For Assistance," and (iii) beneath which there is a buzzer that can be pushed.  *Id.*  On the doors leading to the Second Entrance, there is a sign that says "True Religion," bears the universal symbol for handicap access, and says "ADA ACCESS" and "For Assistance Please Ring Bell." *Id.*

After a wheelchair user presses the buzzer outside the Building, it rings and also triggers a flashing light inside the Premises. *Id.*, ¶ 5. A True Religion employee then provides access to

---

[2] A copy of the Complaint is attached as Exhibit F to the Gordon Decl.
[3] A copy of the Zuehl Rpt. is attached as Exhibit G to the Gordon Decl.

8076483.3/45854-00024

the Building by opening the doors to the Second Entrance and, after the wheelchair user proceeds to the elevator, using a key to operate the elevator and bring it to the interior of the True Religion store. *Id.* True Religion provides training to all of its employees at the Premises regarding this process. *Id.*; Arroyo Tr., p. 43.

The door to the Second Entrance is kept locked, and the elevator can be operated only with the use of the key, for security reasons. Arroyo Decl., ¶ 6. In addition to providing access to the True Religion store, the elevator travels to the basement and upper floors of the Building. *Id.* True Religion stores clothing that it sells in the basement, and the upper floors of the Building contain private residences. *Id.*

According to Plaintiff, he first visited the Building during December 2015 but did not enter the store. Range Tr., p. 21. Plaintiff testified that he was unaware that an elevator at the Premises could have provided him access. *Id.*, p. 26. However, he also testified that, even if he had been aware, he would not have utilized the elevator because it would have required him to obtain assistance from a True Religion employee. *Id.*, pp. 22, 53.

Plaintiff last visited the Building on or about July 10, 2016 but, as he admits, he did not even try to enter the True Religion store. *Id.* Plaintiff saw the buzzer, could have reached it, and could have pressed it. *Id.*, p. 53. Nothing and no one prevented Plaintiff from pushing the buzzer to enter the store; as he concedes, he just "didn't want to" do it. *Id.*

Plaintiff has no plan to return to the True Religion store because he cannot unlock the door to the Second Entrance, and operate the elevator, by himself. *Id.*, pp. 35-36. [4] In short,

---

[4] Plaintiff's intransigence to receiving assistance to enter a store is apparently limited only to employees of True Religion, as he has readily requested and accepted assistance to enter other stores in the Building's neighborhood. Range Tr., pp. 46, 55.

8076483.3/45854-00024

Plaintiff has never utilized, much less tested, the process True Religion has in place for permitting wheelchair users safe access to the Premises as described above. *Id.*

The only method of removal of the barrier to entry Plaintiff has identified is the construction of a wheelchair ramp. Zuehl Rpt., pp. 3-9 ("Recommendation" column). Plaintiff does not provide any specifics with respect to the design parameters of such a wheelchair ramp, nor does Plaintiff explain how such a ramp could be constructed to comply with both the ADA and New York City Building Code.[5] *Id.*

Defendants never have altered the steps that Plaintiff has identified as an architectural barrier to entry to the Building. Hunt Aff., ¶ 15; Hunt Tr., pp. 13-16; Arroyo Tr., pp. 54-57; Jacobi Tr., pp. 40-41. Nor have Defendants altered the front doors leading to the entrances to the Building or the sidewalk area in front of those doors. Hunt Aff., ¶ 15; Hunt Tr., pp. 13-16; Arroyo Tr., pp. 54-7; Jacobi Tr., pp. 40-1. The only work Defendants have done to any of these areas involved waterproofing work done to the metal plating directly in front of the front steps, which was part of routine maintenance and did not affect the functionality of the entry way to the Building. Hunt Tr., p. 17; Arroyo Tr., p. 25.

## ARGUMENT

## I.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S STATUTORY CLAIMS

Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *CSX Transp., Inc. v. Emjay Envtl. Recycling, Ltd.*, 629 Fed. Appx. 147, 148 (2d Cir. 2015). Conversely, to avoid summary judgment, "[t]he nonmovant must 'set forth specific facts showing that there is a genuine issue for trial . . .'" *Rubens v. Mason*, 527 F.3d 252, 254 (2d

---

[5] As explained below, it would be impossible to install a ramp that would comply with both laws.

6

Cir. 2008) (quoting Fed. R. Civ. Pro. 56(e)). The nonmovant "'may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment . . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.'" *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alterations in original) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). "'[T]he summary judgment standard applies with equal force to discrimination cases as it does to other cases.'" *Panzica v. Mas-Maz, Inc.*, No. 05-2595, 2007 U.S. Dist. LEXIS 42171, at *13 (E.D.N.Y. June 11, 2007) (quoting *Faruq v. Wal-Mart Stores, Inc.*, 2006 U.S. Dist. LEXIS 4676, at *12 (W.D.N.Y. Jan. 23, 2006)).

As explained below, Defendants are entitled to summary judgment on Plaintiff's statutory claims because Plaintiff cannot establish that Defendants discriminated against him on the basis of his disability under any of the statutes upon which Plaintiff bases his claims.

A.    Plaintiff Cannot Establish That Defendants Discriminated Against Him On The Basis Of His Disability In Violation Of The ADA

"Title III of the ADA prohibits discrimination against individuals 'on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation....'" *Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 368 (2d Cir. 2008) (quoting 42 U.S.C. § 12182(a)). To establish a violation of Title III of the ADA, the plaintiff must "establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Roberts*, 542 F.3d at 368.

Here, Plaintiff cannot establish the third element of his claim.  Defendants did not discriminate against Plaintiff because they provided wheelchair access to the Premises by means

7

of an elevator.  Contrary to Plaintiff's assertion, Defendants had no obligation to – and, indeed, could not lawfully – install the ramp that Plaintiff alleges is required.

1.      **Defendants Cannot Be Liable Under The ADA Because Removal Of The Architectural Barrier To Accessibility Is Not Readily Achievable And They Have Ensured Access For Wheelchair Users Via An Alternative Method Of Access**

Defendants cannot be held liable under the ADA because construction of the wheelchair ramp Plaintiff proposes is not readily achievable and Defendants have provided an alternative method of access through the wheelchair-accessible elevator at the Premises

a.      <u>The "Readily Achievable" Standard For Barrier Removal Applies</u>

Under the ADA, "[t]he degree of accountability for architectural barriers depends on whether the place of public accommodation was newly constructed and first occupied after January 25, 1993 …[or] underwent renovations or alterations that affect usability after that date…." *Panzica*, 2007 U.S. Dist. LEXIS 42171, at *14 (citing 42 U.S.C. §§ 12182(b)(2)(A)(iv) and (v) and 12183(a)); *accord Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269, 1273 (11th Cir. 2006) ("The ADA imposes different requirements on the owners and operators of facilities that existed prior to its enactment date").

For structures, like the Building, which was built in 1880 (Hunt Aff. ¶ 17), *i.e.*, long before 1993, and where the portion of the premises in question has not been altered, the ADA imposes a "readily achievable" standard for determining whether or not architectural barriers to entry must be removed. *Roberts*, 542 F.3d at 369 ("in the absence of alterations, a defendant … 'discriminates' if it fails to remove any existing barriers to accessibility where such removal 'is readily achievable'") (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)). To avoid application of the "readily achievable" standard, a plaintiff must "identify[] a modification" and "mak[e] a facially

8

plausible demonstration that the modification is an alteration under the ADA." *Roberts*, 542 F.3d at 371.

Courts analyze the following factors in determining whether an alteration to the relevant part of a facility has been made:

1. The overall cost of the modification relative to the size (physical and financial) of the facility or relevant part thereof.

2. The scope of the modification (including what portion of the facility or relevant part thereof was modified).

3. The reason for the modification (including whether the goal is maintenance or improvement, and whether it is to change the purpose or function of the facility).

4. Whether the modification affects only the facility's surfaces or also structural attachments and fixtures that are part of the realty.

*Id.* "The concept of alteration seems generally to exclude from 'alterations' those modifications that preserve the status and condition of a facility, rather than rendering it materially 'new' in some sense." *Roberts*, 542 F.3d at 370 (emphasis supplied). Thus, where a modification does not extend to the relevant part of the facility, the focus of the modification is maintenance and/or the modification does not affect the structure of the relevant part, an alteration for purposes of the ADA has not occurred.  *See Id.* at 371.

In the instant matter, the "readily achievable" standard applies.  It is undisputed that the Building was built prior to 1993. Hunt Decl., ¶ 7; Jacobi Tr., p. 11. Moreover, based on the applicable factors, Plaintiff cannot demonstrate that an alteration has occurred.  Plaintiff cannot prove that: (i) Defendants spent a meaningful amount modifying the "relevant part" of the Building, *i.e.*, the part of the Building relating to ingress to and egress from the Premises; (b) any work performed on such relevant part was broad in scope; (c) any such work went beyond routine maintenance that had no impact on the function of the facility; and (d) any structural changes to the Building's entry ways were made.  The reality is that any maintenance and repairs

9

to the entry ways to the Premises were superficial and merely intended to preserve the status and condition of the entry ways, rather than rendering them materially new or materially modifying their functionality. Hunt Aff., ¶ 12, Exh. 8; Hunt Tr., pp. 13-17; Arroyo Tr., pp. 25, 54-57; Jacobi Tr., pp. 40-41.

   If there have been any alterations made, they have been to the interior of the Premises only.  However, that is an entirely different part of the facility.  For purposes of determining whether the entry ways to the Premises have been altered, alterations to the interior of the Premises are irrelevant.  *Roberts*, 542 F.3d at 375-378 (analyzing separately whether a resort's rooms, pool and parking areas were altered on the ground that they were separate parts of the resort).[6]

---

[6]   To the extent that Plaintiff maintains that the entry ways to the Premises should be deemed "altered" because they are part of a "path of travel" to the interior portion of the Premises, which has been renovated, any such argument would be baseless. A "path of travel" to an altered area is "a **continuous**, **unobstructed** way of pedestrian passage by means of which the altered area may be approached, entered, and exited . . ." 28 CFR §36.403(e)(1) (emphasis added).  However, the Second Entrance to the Premises, through which wheelchair users gain access to the Premises, does not meet these criteria.  There is no continuous path, and there are obstructions inasmuch as a True Religion employee must unlock the door from the street and use a key to operate the elevator.  Further: (i) pursuant to 28 C.F.R. §36.403(d), "alterations by the tenant in areas that only the tenant occupies do not trigger a path of travel obligation upon the landlord with respect to areas of the facility under the landlord's authority, if those areas are not otherwise being altered;" (ii) any alterations to the interior of the Premises were to an area only occupied by True Religion; and (iii) as a result, any such alterations would not have triggered any responsibility of the Co-op or 513 Broadway to make renovations in areas controlled by them.  Moreover, in the absence of any evidence that the Co-op or 513 Broadway made alterations in a manner that discriminated against Plaintiff, any claim for alleged discriminatory alterations must fail.  *See De La Rosa v. Lewis Foods of 42nd St., LLC*, 124 F.Supp.3d 290, 296 (S.D.N.Y. 2015) (holding that where the statute provides that discrimination includes "failing to *make* alterations," defendant could not be liable failing to make an alteration it did not perform because "[i]t is *conduct*, not identity that gives rise to liability under §12183(a)(2).") (internal quotations and citations omitted).

8076483.3/45854-00024

      b.      Plaintiff Has Not Met His Burden Of Identifying A
                  "Readily Achievable" Way Of Removing
                  Architectural Barriers To Access

Where the "readily achievable" standard applies, "the plaintiff bears the initial burden of identifying both the existence of an architectural barrier and a method of removing that barrier that is 'readily achievable.'" *Panzica*, 2007 U.S. Dist. LEXIS 42171, at *15; *accord Roberts*, 542 F.3d at 373 ("we require a plaintiff to articulate a plausible proposal for barrier removal, 'the costs of which, facially, do not clearly exceed its benefits'") (quoting *Borkowski v. Valley Central School District*, 63 F.3d 131, 138 (2d Cir. 1995)).

In the instant matter, Plaintiff has failed to meet his initial burden. Although Plaintiff has identified the front steps to one Building entrance as a barrier to entry, his sole proposed method of removing that barrier – construction of a wheelchair ramp – is not "readily achievable" because installation of it would be blatantly unlawful and totally impractical.

Installation of the proposed wheelchair ramp cannot be accomplished without violating the ADA, on the one hand, or violating New York City law and blocking the entire sidewalk in front of the Building and car traffic on Broadway, on the other. Subject to exceptions not applicable here, the ADA requires that when a new ramp is installed, the "maximum slope" shall be 1:12. ADAAG § 4.8.2. That means that for every one inch of height covered by the ramp, it must be one-foot long. Zuehl Dep., p. 74. The rise from the street level to the entry to the True Religion store is 17 inches. Zuehl Rpt., p. 3 (Item No. p. 2) and p. 4 (Item No. 4). Accordingly, any ramp would need to be 17 feet in length to comply with the ADA. *See* Zuehl Dep., p. 79.[7] In addition, under the ADA, there would need to be a landing at each end of the ramp that is five

---

[7] During Zuehl's deposition, he testified that any such ramp would need to be 15 feet long based on a rise of 15 inches. However, Zuehl's testimony fails to account for the additional two inches of rise from the front steps to the front entrance. Zuehl Rpt., p. 4 (Item No. 4) and p. 11 (Image AD).

feet in length.  ADAAG § 4.8.4; Zuehl Dep., p. 80.  Thus, a total of 27 feet of space would be required to construct an ADA compliant ramp.  However: (i) under New York City law, the ramp cannot extend more than 44 inches from the Building's facade (New York City Building Code § 3202.2.2.1); and (ii) as a practical matter, a ramp of 17 feet in length plus ten feet of landing space would block the entire sidewalk on one side of Broadway, which would prevent pedestrians from walking on the sidewalk in front of the Building, and extend into the street, which would block car traffic on Broadway (Declaration of Natalie Tran dated August 11, 2016, ¶ 4).[8]

Plaintiff's purported expert has not addressed any of the foregoing fatal flaws with respect to the proposal to install a ramp.  Indeed, he has not suggested any design whatsoever for the installation of a ramp, let alone provided a detailed explanation as to how one could be lawfully installed. Other than surmise that a ramp "would be the easiest way" to provide access into the Premises (Zuehl Tr., p. 71), Plaintiff's purported expert has not put any further thought into whether or how his proposal actually could be implemented; he could not answer, when asked, how a ramp could be installed at the Premises that complies with the ADA and New York City law (*Id.*, p. 81); and he does not know what kind of work would be required to install a ramp there (*Id.*).

Accordingly, the purported method of barrier removal proposed by Plaintiff is not (even close to) readily achievable. *De La Rosa*, 2015 U.S. Dist. LEXIS 158089, at *42, *53 (holding that installation of a ramp was impermissible where it would have extended more than 44 inches from the property line and blocked more than half of the sidewalk); *see also* 42 U.S.C. §

---

[8] Pursuant to Title 34, § 7-06 of the Rules of the City of New York, the New York City Department of Transportation cannot consent to exceed the 44-inch rule under these circumstances.

12181(9) (stating that removal of a barrier to access is readily achievable only if it is "easily accomplishable and able to be carried out without much difficulty or expense"); *Panzica*, 2007 U.S. Dist. LEXIS 42171, at *14 (similar, quoting statute).[9]

c.   Defendants Have Complied With The ADA By Providing
An Alternative Method Of Access Into The Premises

Although installation of a ramp is not possible, wheelchair users may access the Premises through another lawful method:  the use of an elevator that, at all times relevant to the Complaint, has operated within the Building.  By making an elevator available to wheelchair users, Defendants have complied with any conceivable obligation they could have under the ADA.

Federal regulations provide that "[w]here a public accommodation can demonstrate that barrier removal is not readily achievable, the public accommodation shall not fail to make its . . . facilities . . . available through alternative methods, if those methods are readily achievable." 28 C.F.R. § 36.305(a); *accord* 28 C.F.R. § 36.304(d)(3) (if strict compliance with "the measures required to remove a barrier would not be readily achievable, a public accommodation may take other readily achievable measures to remove the barrier that do not fully comply with the specified requirements"). Thus, if removal of a barrier to access is readily achievable, it must be done, but, if not readily achievable, then alternative methods to access must be utilized to the

---

[9] Although 42 U.S.C. § 12181(9) lists factors that a court ordinarily considers in determining whether an action is readily achievable, it can be readily concluded that Plaintiff's suggested solution is not "easily accomplishable" and would require "much difficulty" to implement inasmuch as it would, if implemented, result in a violation of New York City law, prevent pedestrians from walking on the sidewalk in front of the Building, and block traffic on Broadway.  Therefore, resort to an analysis of the usual factors is unnecessary. Further, the ADA does not require removal of stairs where, as here, doing so would require extensive ramp construction or when levels connected by stairs also are connected by an accessible route. *See* 28 C.F.R., Part 36, Appendix C, Dep't of Justice 1991 Section-by-Section Analysis at p. 229; 28 C.F.R., Part 36, Appendix A, Dep't of Justice 2010 Guidance and Analysis at p. 65.

13

extent they are readily achievable.  *Id.*; *see also Roberts,* 542 F.3d at 368; *597 Broadway Dev. Corp.,* 2015 WL 7351540 at *6.

Defendants easily satisfy the applicable federal regulations because they use an alternative method, *i.e.*, an elevator.  They have posted prominent signs showing that there is a store entrance that does not require use of stairs. Arroyo Decl., ¶ 4.  The signs also identify a buzzer that, when pressed, causes a red light to illuminate within the True Religion store, and all True Religion employees are trained to open the Second Entrance for wheelchair users immediately when seeing the red light. *Id.*, ¶ 5. Through that Second Entrance, wheelchair users can proceed to an elevator, which opens up within the True Religion store. *Id.* Accordingly, a wheelchair user can bypass the steps in front of the Building by using an accessible elevator that can be reached through the Second Entrance to the Premises. *Id.*

Although the alleged expert report submitted by Plaintiff notes that a wheelchair user cannot obtain access to or use the elevator unless a True Religion employee provides access to and operates the elevator, it is undisputed that wheelchair users can obtain access to True Religion's store with such assistance.  It also is beyond dispute that Plaintiff has never suggested any method whatsoever for modifying the current arrangement other than installation of an unlawful and wholly impractical ramp.

The bottom line is that Defendants have provided an alternative method of access that renders the True Religion store fully and readily accessible to wheelchair users.

> 2.      Defendants Cannot Be Liable Under The ADA Even If The Premises Are Considered Altered

As explained in Section I(A)(1)(a) above, the "readily achievable" standard applies to this matter because the part of the Building in question has not been altered.  However, even if

the Court were to determine that alterations have been made, Plaintiff still could not establish a violation of the ADA.

For parts of structures that have undergone alterations, the ADA provides that discrimination involves "a failure to make alterations in such a manner that, *to the maximum extent feasible, the altered portions of the facility are readily accessible* to and usable by individuals with disabilities, including individuals who use wheelchairs." 42 U.S.C. § 12183(a)(2) (emphasis added).

Again, Plaintiff's only suggested method for barrier removal involves the installation of a ramp. However, as a matter of law, installation of a ramp is not only not readily achievable, for the reasons stated above, it also is infeasible.

In *De La Rosa v. 597 Broadway Dev. Corp.*, which involved both Plaintiff's law firm and alleged expert and substantially identical facts, another judge within the Southern District of New York rejected the argument that a ramp must be installed to satisfy the "maximum extent feasible" test. Indeed, in the *De La Rosa* case, the court specifically held that the "maximum extent feasible" standard did not require proceeding with either of two wheelchair ramp designs proposed by the plaintiff in that case because, *inter alia*, each would have violated the New York City rule prohibiting ramp extensions onto sidewalks more than 44 inches from the building line. *De La Rosa*, 2015 U.S. Dist. LEXIS 158089, at *42, *53; New York City Building Code § 3202.2.2.1. Although the court acknowledged that in certain limited instances the New York City Department of Transportation ("DOT") has authority to grant a revocable consent excusing a violation of this prohibition, it still granted summary judgment because the DOT has no such authority where, as here, the ramp would obstruct more than half of the sidewalk width (or fail to leave a minimum of 8 feet of sidewalk width unobstructed). *De La Rosa*, 2015 U.S. Dist. LEXIS

15

158089, at *46.  Here, there is no dispute – as established by Plaintiff's expert's testimony and observations of the Premises – that similar (if not identical) conditions exist, which prevent the Defendants from implementing the Plaintiff's ramp proposal.  *See* Zuehl Dep., pp. 74, 79-80; Zuehl Rpt., p. 3 (Item No.  p. 2) and p. 4 (Item No. 4); Tran. Decl., ¶ 3.

Moreover, the record is devoid of evidence that Defendants have not already, to the maximum extent feasible, made the True Religion store readily accessible to wheelchair users. The alleged expert report submitted by Plaintiff does not contain a single recommendation for modifying the current arrangement relating to accessibility, let alone one that is feasible.[10]

Accordingly, even if the Court were to apply the "maximum extent feasible" standard instead of the "readily achievable" standard to determine whether Defendants have complied with their obligations under the ADA, the Court still should conclude that Defendants have met their ADA obligations.

**B.     Plaintiff Cannot Establish That Defendants Discriminated Against Him On The Basis Of His Disability In Violation Of The NYHRL And NYCRL**

The NYHRL and NYCRL both make it illegal to discriminate on the basis of disability under New York State law.[11]  Plaintiff cannot establish a violation of either of these State statutes.

---

[10] At the conclusion of his deposition, Plaintiff suggested that the door to the Second Entrance be left unlocked. Range Tr., p. 59. Aside from altogether ignoring Defendants' valid security concerns, he did not explain how that would change anything for him in terms of accessing the True Religion store.  After entering through the Second Entrance, a wheelchair user still would need to use the elevator to get to the True Religion store, which requires a key to operate it. Arroyo Decl., ¶ 5.

[11] The NYHRL makes it "an unlawful discriminatory practice … for any place of public accommodation … because of … disability … to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof…." N.Y. Exec. Law § 296(2)(a). The NYCRL states that "[n]o person shall, because of…disability…be subjected to any discrimination in his or her civil rights…by any other person or by any firm, corporation or institution…."  N.Y. Civ. R. Law § 40-c.

16

The NYHRL utilizes the "readily achievable" standard. *De La Rosa*, 2015 U.S. Dist. LEXIS 158089, at *60.  As the court stated in *De La Rosa*, 2015 U.S. Dist. LEXIS 158089, at *60:

> Under the ADA and attendant regulations, if a pre-existing facility has been subjected to an 'alteration', the applicable standard looks to whether the altered portion was made 'readily accessible to the maximum extent feasible' … In contrast, the State statute looks to whether the proposed accommodation is 'readily achievable' … which is adopted from federal law that governs pre-existing facilities that have not been altered.

(internal citations omitted); *accord* N.Y. Exec. Law § 296(2)(c)(iii)).

As explained above, Plaintiff has not identified any readily achievable accommodation and Defendants have provided an alternative method of access to wheelchair users.  Thus, Plaintiff cannot establish disability discrimination in violation of the NYHRL.

Further, for the same reasons that Plaintiff cannot recover under the ADA, he cannot recover under the NYCHRL.  *See Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004) ("New York State disability discrimination claims are governed by the same legal standards as federal ADA claims"); *Panzica*, 2007 U.S. Dist. LEXIS 42171, at *5 n.1 ("Claims for disability discrimination arising under the . . . New York Civil Rights Law § 40-c are governed by the same legal standards as federal ADA claims.").

C.    Plaintiff Cannot Establish That Defendants Discriminated Against Him On The Basis Of His Disability In Violation Of The NYCHRL

Plaintiff also cannot establish disability discrimination in violation of the NYCHRL.[12]

"In the context of public accommodations, the [New York City Human Rights] Commission has ruled that the NYCHRL requires the owner of the facility to 'make the main

---

[12] Section 8-107(4)(a) of the NYCHRL states that it is "[A]n unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of the actual or perceived … disability … directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof…"

8076483.3/45854-00024

entrance to a building accessible unless doing so creates an undue hardship, or is architecturally

infeasible.'" *De La Rosa*, 2015 U.S. Dist. LEXIS 158089, at *63 (quoting *In the Matter of Irene*

*Politis v. Marine Terrace Holdings, LLC et al.*, 2012 NYC HRC Lexis 3 (N.Y.C. Comm. Hum.

Rts. April 24, 2012)). In applying this test, courts "infer that architectural infeasibility looks *inter*

*alia* to whether a proposed accommodation that requires agency approval can gain that approval

under governing standards." *De La Rosa*, 2015 U.S. Dist. LEXIS 158089, at *64.

In the instant matter, the proposed accommodation, installation of a ramp, is

architecturally infeasible because it could not be approved by the New York City Department of

Buildings under the governing standards.  As explained above: (i) to comply with the ADA, any

ramp would need to be 17 feet long, with five foot landings on each end, utilizing a total of 27

feet from the facade of the Building; (ii) New York City Building Code § 3202.2.2.1 prohibits

ramp extensions onto sidewalks more than 44 inches from the building line; and (iii) pursuant to

Title 34, § 7-06 of the Rules of the City of New York, the DOT cannot grant a revocable consent

to exceed the 44 inch rule because a ramp requiring 27 feet of space would obstruct more than

half of the approximately 18-foot wide sidewalk width (and fail to leave a minimum of 8 feet of

sidewalk width unobstructed).  *De La Rosa*, 2015 U.S. Dist. LEXIS 158089, at *42, *53 (holding

that the proposed wheelchair ramp was architecturally infeasible under the NYCHRL where its

construction would violate the foregoing rules and regulations).

     D.     **Plaintiff Cannot Recover Damages Based On Any Argument That**
               **He Did Not Know About The Elevator's Existence, Because He Admits**
               **He Would Not Have Used It Under Any Circumstance**

To the extent that Plaintiff maintains that Defendants were in violation of accessibility

laws at the time that he allegedly visited the Building, in December 2015, because certain signs

directing wheelchair users how to obtain elevator access were not posted at the time, Plaintiff's

deposition testimony precludes his recovery.  Plaintiff explicitly testified that he would not use

the Building's elevator under any circumstance because he cannot enter and operate it himself.[13] In other words, whether or not Plaintiff knew how to access the elevator when he supposedly visited the Premises, he would not have utilized it anyway. Based on this admission, Plaintiff cannot recover any damages based on any argument that Defendants did not post signs sufficient to apprise Plaintiff of the existence of any elevator. *See De Brasi v. Plaza Hotel*, No. 03-cv-5159, 2005 U.S. Dist. LEXIS 8569 (S.D.N.Y. May 9, 2005) (granting summary judgment to the defendant on an employment retaliation claim and holding that the plaintiff could not prove she had suffered an adverse employment action where, *inter alia*, the defendant offered the plaintiff alternative work accommodations to address plaintiff's job-related concerns which the plaintiff refused); *Joseph v. Thompson*, No. 95-cv-4898, 2005 U.S. Dist. LEXIS 39419, at *16-7 (E.D.N.Y. Mar. 23, 2005) (granting summary judgment to defendant in employment discrimination action where, *inter alia*, the defendant offered the plaintiff reassignment to resolve concerns that had been raised but the plaintiff refused); *Hiller v. County of Suffolk*, 199 F.R.D. 101 (E.D.N.Y. 2001) (granting judgment as a matter of law to the defendants on issue of damages where the plaintiff Caucasian police officer job applicants could not establish a causal link between the emotional harm they allegedly suffered as a result of being denied police officer jobs due to the defendant's policy favoring minority applicants where the evidence established that the plaintiffs would not have been offered police officer jobs regardless of such policy).

---

[13] Range Tr., p. 22 (regarding Plaintiff's visit to the Building after signs regarding the elevator were posted …"Q: Did you notice if there was a buzzer to gain entry? A: Yes. Q: Did you press the buzzer? A: No, when there's a buzzer that means I can't access the store myself. I … would have to get help from someone, and when that happens I feel stripped of my independence."), p. 23 ("Q: And so whenever you see a sign that says, if you need assistance contact us, you don't contact because you don't want help? A: No, I would have to wait for somebody to help me…"), and p. 53 (Q: "Could you have pushed the bell if you wanted to? A: I didn't want to. Q: Could you have? A: I guess so.").

E.    Plaintiff Cannot Avoid Dismissal Based On Any Argument That Defendants
      Should Be Ordered To Maintain Wheelchair Accessibility Through The Elevator

If Plaintiff argues that his case should not be dismissed because there is no order or

judgment requiring Defendants to continue to maintain wheelchair accessibility through the use

of the elevator, such argument should be rejected.

First, True Religion and 513 Broadway have consented to the entry of a judgment against

them requiring them to maintain the *status quo* relating to accessibility.[14]  Gordon Decl., Exh. H.

Once a defendant has consented to judgment for all relief a plaintiff could obtain at trial, the

matter is resolved and should be dismissed. *ABN AMRO Verzekeringen BV v. Geologistics Ams.,*

*Inc.*, 485 F.3d 85 (2d Cir. 2007) (upholding trial court's dismissal of action where court found

that the plaintiff was only entitled to recover a portion of damages claimed and the defendant

consented to entry of judgment in that amount); *Rienzi & Sons, Inc. v. N. Puglisi & F. Industria*

*Paste Alimentari S.P.A.*, No. 08-CV-2540 (DLI) (RLM), 2015 U.S. Dist. LEXIS 19358, at *1-2

(E.D.N.Y. Feb. 18, 2015) (entering judgment and dispensing with trial where the defendant

"consented to judgment for all the relief the plaintiff seeks at trial" regarding the plaintiff's only

remaining claim after parties' summary judgment motions).

Second, Plaintiff does not have standing to obtain injunctive relief.  In order to

demonstrate "standing to obtain injunctive relief, [the Plaintiff] must show a likelihood of future

discrimination….  Past exposure to illegal conduct does not itself show a present case or

controversy regarding injunctive relief…if unaccompanied by any continuing, present adverse

effects." *Stan v. Wal-Mart Stores, Inc.*, 111 F.Supp.2d 119, 125 (N.D.N.Y. 2000) (internal

quotation and citation omitted).  He must also establish irreparable harm, which requires a

---

[14] Insofar as the Co-op has not consented to entry of a judgment, this argument does not apply to
the Co-op.

"showing of likelihood of future discrimination." *Id.* Plaintiff cannot satisfy these burdens, inasmuch as Plaintiff has, by his own admission, no intention of returning to the Premises.

The evidence indisputably shows that when Plaintiff last travelled to the True Religion store, on approximately July 10, 2016, he knew that he could enter the store via the elevator, yet he rejected the elevator as a method of access, because he did not want to wait for a True Religion employee to help him. Range Tr, pp. 35-36. The only "barrier" to entry was Plaintiff's unwillingness to use the available means of wheelchair access into the store, not the two steps at one of the store's two entrances. Plaintiff plainly has no plan to return to the Premises as they are currently arranged. Accordingly, he lacks standing to obtain an injunction requiring Defendants to maintain the *status quo. Stan,* 111 F.Supp.2d at 126 (finding, in part, that the plaintiff's lack of intention to shop at the defendants' stores negated a claim that the plaintiff would be subjected to discrimination because of her disability); *see also Perdum v. Forest City Ratner Cos.,* No. 11-CV-315 (PKC), 2016 WL 122859 *1, * 9 (E.D.N.Y. Mar. 28, 2016)(finding that the alleged barrier to access in that case, an alleged vertical clearance defect in a mall's parking garage, did not deter the plaintiff's access into the mall, but, rather, the plaintiff was deterred by his own claustrophobia); *Comm'n on Human Rights v. E&E Bagels, Inc.,* 2016 WL 1644879 *1, 6 (N.Y.C. Comm. Hum. Rights April 20, 2016)(holding that a defendant need not provide "the specific accommodation sought, rather, a covered entity may propose [a] reasonable alternative[] that meet[s] the specific needs of the person with the disability or that specifically address[es] the limitation at issue").

*          *          *          *          *          *

For these reasons, Plaintiff's claims for violations of the ADA, NYHRL, NYCRL and Administrative Code of the City of New York should be dismissed.

## II.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S NEGLIGENCE CLAIM

Plaintiff asserts a cause of action for common law negligence based on allegations that Defendants supposedly "negligently designed, constructed, operated, repaired and maintained their place of public accommodation . . ." and "endangered his safety."  Cmplt ¶¶ 87-93.

A cause of action for negligence may only be sustained on a showing (1) of the existence of a duty, (2) that such duty has been breached, and (3) that such breach was a proximate cause of the events which produced the injury.  *In re MS Angeln GmbH & Co. KG*, 10 F. Supp. 3d 424, 430 (S.D.N.Y. 2014) (citing *Cornfield v. Cornfield*, 156 Fed.Appx. 343, 344 (2d Cir 2005)); *accord Sewar v. Gagliardi Bros. Serv.*, 51 N.Y.2d 752, 758 (1980).  Here, Plaintiff cannot prove the elements of a negligence claim.

As a preliminary matter, Plaintiff concedes that he has suffered no injury as a result of any purported negligence.  When asked how Defendants "endangered" Plaintiff's safety, he testified: "There's no accessibility to the store."  Range Tr., p. 51.  And, when asked if he was injured because he could not access the store, Plaintiff testified: "No."  *Id.*.  Indeed, Plaintiff never even attempted to enter the True Religion store. *Id.*, p. 21-2, 53.  Accordingly, by his own admission, Plaintiff cannot satisfy the third element of a negligence claim.

Moreover, Plaintiff cannot establish the breach of any duty of care.  As explained above, through the use of the Second Entrance and an elevator, Plaintiff always has been able to access the Premises.  The record is devoid of any evidence that the Second Entrance and elevator have not been "designed, constructed, operated, repaired and maintained" appropriately.[15]

Further, Plaintiff's negligence claim is redundant of his statutory claims. It is based on the exact same conduct.  As Plaintiff stated, he bases his negligence claim on his purported

---

[15] There also is no evidence that any Defendant even was involved in the design or construction of the Building, nor could there be given the Building's age.  Hunt Decl. at ¶ 7.

8076483.3/45854-00024

misguided belief that "[t]here's no accessibility to the store" (Range Tr., pp. 51:11-18), which is the very same misguided belief underlying his statutory claims.  Common law negligence claims that are duplicative of statutory claims cannot be sustained. *Francis v. Lo-Do Corp.*, No. 14-cv-5422 (KBF), 2014 WL 7180091 *1, *2 (S.D.N.Y. Dec. 5, 2014) (dismissing common law negligence claim and stating that, "Although the ADA does not preempt common law claims in general, plaintiff's common law negligence claim here fails … [because] [i]n the complaint, plaintiff merely repeats language sufficient for the statutory claim (negligence in designing a place of public accommodation) and fails to allege additional facts that defendants breached any common law duty that caused a physical or emotional distress injury to plaintiff."); *Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*, No. 05-CV-6734T, 2007 U.S. Dist. LEXIS 3616 (W.D.N.Y. Jan. 18, 2007) (granting motion to dismiss negligence causes of action based on court's holding that, "allowing plaintiffs to proceed directly under both the invoked statutes and common law negligence would result in duplicative causes of action."); *Chen v. St. Beat Sportswear*, Inc., 364 F. Supp. 2d 269, 293 (E.D.N.Y. 2005) (granting summary judgment to defendant where court found that, "plaintiffs' allegations make clear that their negligence causes of action are founded upon the same facts as and therefore are duplicative of the [Fair Labor Standards Act] claims").

Accordingly, Plaintiff's claim for negligence should be dismissed.

8076483.3/45854-00024

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment should be granted

and the Complaint should be dismissed in its entirety.

DATED:  New York, New York
       September 2, 2016

                       MITCHELL SILBERBERG & KNUPP LLP


By: /s/David B. Gordon
    David B. Gordon (DG 0010)
    Travis Meserve (TM 6785)
    12 East 49th Street, 30th Floor
    New York, New York 10017-1028
    Telephone:  (917) 546-7701
    Facsimile:  (917) 546-7671

    Attorneys for Defendants
    True Religion Sales, LLC, incorrectly
    named herein as True Religion Apparel
    Inc., and 513 Broadway Realty, LLC

DATED:  New York, New York
       September 2, 2016

                       BRAVERMAN GREENSPUN, P.C.


By: /s/ Manu Leila Davidson
    Manu Leila Davidson (MD 5119)
    110 East 42nd Street, 17th Floor
    New York, New York 10017
    Telephone:  (212) 682-2900
    Facsimile:  (212) 682-7718

    Attorneys for Defendant
    515 Broadway Corp.

24