David B. Gordon (DG 0010)
Mitchell Silberberg & Knupp LLP
12 East 49th Street, 30th Floor
New York, New York 10017
(917) 546-7701

*Attorneys for Defendants True Religion
Sales, LLC and 513 Broadway Realty, LLC*

Manu Leila Davidson (MD 5119)
Braverman Greenspun, P.C.
110 East 42nd Street, 17th Floor
New York, New York 10017
(212) 682-2900

*Attorneys for Defendant
515 Broadway Corp.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KING RANGE,<br><br>       Plaintiff,<br><br>   v.<br><br>515 BROADWAY CORP., 513 BROADWAY REALTY, LLC AND TRUE RELIGION APPAREL, INC.,<br><br>       Defendant. | CASE NO. 16-CV-1016-JMF |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF**
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

## TABLE OF CONTENTS

**Page**

I. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S ADA CLAIM ................................................................................................ 1

    A. Defendants Cannot Be Liable Under The ADA Because Removal Of The Architectural Barrier To Accessibility Is Not Readily Achievable And They Have Ensured Access For Wheelchair Users Via An Alternative Method Of Access ............... 1

        1. The "Readily Achievable" Standard For Barrier Removal Applies .................... 1

        2. Plaintiff Has Not Met His Burden Of Identifying A "Readily Achievable" Way Of Removing Architectural Barriers To Access ........................................ 3

        3. Defendants Have Complied With The ADA By Providing An Alternative Method Of Access Into The Premises ............................................................. 7

        4. Defendants Cannot Be Liable Under The ADA Even If The Premises Are Considered Altered ........................................................................................... 9

II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S CLAIMS UNDER THE NYHRL AND NYCRL ................................................ 9

III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S CLAIM UNDER THE NYCHRL ...................................................................... 9

IV. THERE IS NO BASIS FOR INJUNCTIVE RELIEF .............................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

### Cases

*Aventis Pharms., Inc. v. Barr Labs., Inc.*,
   372 F. Supp. 2d 430 (D.N.J. 2005) ............................................................................................6

*Borkowski v. Valley Cent. Sch. Dist.*,
   63 F.3d 131 (2d Cir. 1995) ........................................................................................................6

*Canon Inc. v. Color Imaging, Inc.*,
   2015 U.S. Dist. LEXIS 179445 (N.D. Ga. Sep. 11, 2015) ........................................................5

*Celeste v. E. Meadow Union Free Sch. Dist.*,
   373 Fed. Appx. 85 (2d Cir. 2010) ..............................................................................................6

*Civic Ass'n of Deaf of New York City v. Giuliani*,
   970 F. Supp. 352 (S.D.N.Y. 1997) ............................................................................................2

*Davis v. John S. Ciborwski Family Trust*,
   2013 WL 1410007 (D.N.H. April 8, 2013) ...............................................................................2

*De La Rosa v. 597 Broadway Dev. Corp.*,
   2015 WL 7351540 (S.D.N.Y. Aug. 4, 2015) ............................................................................9

*De La Rosa v. Lewis Foods of 42nd St., LLC*,
   124 F.Supp.3d 290 (S.D.N.Y. 2015) .........................................................................................3

*Fowler v. Kanawha Valley Fine Jewelry & Loan LLC*,
   2015 U.S. Dist. LEXIS 3761 (S.D. W.Va. Jan. 13, 2015) .........................................................4

*Harkabi v. Sandisk Corp.*,
   2012 U.S. Dist. LEXIS 92674 (S.D.N.Y. June 20, 2012) .........................................................6

*Kane v. Carmel Cent. Sch. Dist.*,
   2014 U.S. Dist. LEXIS 179195 (S.D.N.Y. Dec. 15, 2014) .......................................................6

*Kreisler v. Second Ave. Diner Corp.*,
   2012 U.S. Dist. LEXIS 129298 (S.D.N.Y. Sept. 11, 2012) .......................................................4

*Mannick v. Kaiser Found. Health Plan, Inc.*,
   2006 U.S. Dist. LEXIS 38430 (N.D. Cal. June 9, 2006) ...........................................................8

*Moore v. Robinson Oil Corp.*,
   2012 U.S. Dist. LEXIS 80780 (N.D. Cal. June 11, 2012) .........................................................8

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Nat'l All. for Accessability, Inc. v. McDonald's Corp.*,
   2013 U.S. Dist. LEXIS 172268 (M.D. Fla. Dec. 6, 2013) ........................................................4

*Orlando v. Los Alamitos Racing Ass'n*
   2015 U.S. Dist. LEXIS 9960 (C.D. Cal. Jan. 28, 2015) .........................................................8

*Panzica v. Mas-Maz, Inc.*,
   2007 U.S. Dist. LEXIS 42171 (E.D.N.Y. June 11, 2007) ......................................................5

*Paros Props. LLC v. Colo. Cas. Ins. Co.*,
   2015 U.S. Dist. LEXIS 116939 (D. Colo. Sep. 2, 2015) ........................................................6

*Pascuiti v. New York Yankees*,
   1999 U.S. Dist. LEXIS 18736 (S.D.N.Y. Dec. 6, 1999) ........................................................5

*Roberts v. Royal Atlantic Corp*,
   542 F.3d 363 (2d Cir. 2008) ...................................................................................................2

*Rosa v. 600 Broadway Partners, LLC*,
   2016 WL 1276448 (S.D.N.Y. March 30, 2016) .....................................................................2

*Small v. Dellis*,
   1997 U.S. Dist. LEXIS 23611 (D. Md. Dec. 18, 1997) .........................................................6

*Strong v. Valdez Fine Foods*,
   724 F.3d 1042 (9th Cir. 2013) ................................................................................................6

*Wilson v. Pier 1 Imps. (US), Inc.*,
   439 F. Supp. 2d 1054 (E.D. Cal. 2006) ..................................................................................4

**STATUTES**

42 U.S.C.
   § 12181(9) ...........................................................................................................................5, 8
   § 12183(a)(2) ..........................................................................................................................2

28 C.F.R. § 36.403 ..........................................................................................................................3

.1/45854-00024

Defendants[1] respectfully submit this Reply Memorandum of Law in further support of their motion for summary judgment.

## I. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S ADA CLAIM

Plaintiff has not advanced evidence or arguments sufficient to sustain his ADA claim.

### A. Defendants Cannot Be Liable Under The ADA Because Removal Of The Architectural Barrier To Accessibility Is Not Readily Achievable And They Have Ensured Access For Wheelchair Users Via An Alternative Method Of Access

The two methods of barrier removal that Plaintiff has suggested – installation of a ramp or a platform lift – are not readily achievable and Defendants have provided an alternative method of access through the wheelchair-accessible elevator at the Premises.

#### 1. The "Readily Achievable" Standard For Barrier Removal Applies

There is no dispute that the Building was constructed in 1880 (Hunt Aff. ¶ 17) or that the "'readily achievable' standard applies to unaltered *portions* of a public accommodation in buildings built before January 26, 1992" (Opp. Br., p. 10)(emphasis added). Accordingly, unless Plaintiff can prove that the relevant portion of the Building, *i.e.*, the part relating to ingress to and egress from the Premises, has been altered, the "readily achievable" standard applies.

##### a. Plaintiff Has Not Identified Relevant Alterations

Plaintiff contends that alterations were made relating to ingress and egress since January 26, 1992, as follows: (i) installation of an elevator within the Second Entrance; (ii) relocation of a power junction box and removal of an electric panel relating to the elevator; and (iii) repair work to the sidewalk in front of the Building. Opp. Br., pp. 11-12. His contentions are baseless.

The elevator was installed prior to 1992. Second Affidavit of Diane Hunt, sworn to November 14, 2016 ("2d Hunt Aff."), ¶ 7. There is no evidence establishing installation on or after January 26, 1992. Plaintiff merely notes that True Religion's expert stated that the

---

[1] Defined terms shall have the same meanings as in Defendants' initial brief.

"building underwent renovations to increase the accessibility of the building by the installation of an elevator at grade level." Opp. Br., p. 11. True Religion's expert did not say, however, that the particular renovation work that he was referencing occurred on or after January 26, 1992.

Plaintiff has not demonstrated how the relocation of a power junction box and removal of an electrical panel could have amounted to "alterations." As Plaintiff himself acknowledges, "[a]n alteration is a change that affects or could affect . . . usability . . ." Opp. Br., p. 10 (citing 42 U.S.C. § 12183(a)(2)). There is no proof that relocation of a power junction box or removal of an electric panel affected usability of the elevator.

The record shows that the sidewalk work at issue was repair work and not, as Plaintiff has claimed, "reconstruction," "rehabilitation" and/or "renovation" work. Plaintiff relies on Hunt Aff., Exh. 8 (Opp. Br., p. 11), which consists of invoices relating to the work that describe the "SCOPE OF JOB" as "Sidewalk Repair" and say that the work involved re-caulking and replacing anchors that were "failing and pulling from sidewalk." Such work did not amount to an "alteration." *Roberts v. Royal Atlantic Corp*, 542 F.3d 363, 370 (2d Cir. 2008)("The concept of alteration seems generally to exclude from 'alterations' those modifications that preserve the status and condition of a facility, rather than rendering it materially 'new' in some sense").[2]

          b.        <u>Plaintiff's "Path of Travel" Argument Is Baseless</u>

Plaintiff argues that both entry ways should be deemed altered because they allegedly are part of a "path of travel" to the interior of the True Religion store, which has been renovated, requiring the expenditure of $160,000-$200,000 to make them comply with ADA requirements.

---

[2] Plaintiff relies on *Rosa v. 600 Broadway Partners, LLC*, 2016 WL 1276448 (S.D.N.Y. March 30, 2016), *Davis v. John S. Ciborwski Family Trust*, 2013 WL 1410007 (D.N.H. April 8, 2013) and *Civic Ass'n of Deaf of New York City v. Giuliani*, 970 F. Supp. 352 (S.D.N.Y. 1997) to argue that there has been reconstruction, rehabilitation and/or renovation work, but those cases did not involve basic repairs like those involving the sidewalk.

The Second Entrance most definitely was not part of a "path of travel." Glaringly absent from Plaintiff's brief is the definition of "path of travel," which is "a **continuous**, **unobstructed** way of pedestrian passage by means of which the altered area may be approached, entered, and exited . ." 28 CFR § 36.403(e)(1) (emphasis added).  The Second Entrance, through which wheelchair users access the Premises, does not meet these criteria.  As Plaintiff concedes, there is no continuous path (Opp. Br., p. 5), and there are obstructions inasmuch as a True Religion employee must unlock the street door and use a key to operate the elevator (Arroyo Decl., ¶ 5).

With respect to the First Entrance, Plaintiff has not demonstrated that spending $160,000 to $200,000 would have enabled compliance with ADA requirements.  Plaintiff maintains that Defendants could have installed an ADA-compliant ramp or portable lift for less than $160,000-$200,000.  Opp. Br., pp. 16-17. But the issue is not one of money.  As explained in Point I(A)(2) below, an ADA-compliant ramp or lift could not have been installed without violating New York City law, and Plaintiff cites no authority holding that Defendants had a duty to make the proposed installations, pursuant to the "path of travel" requirement, in this circumstance. Also, any interior alterations to an area only occupied by True Religion did not trigger a duty of the Co-op or 513 Broadway to modify areas controlled by them.  *See* 28 C.F.R. §36.403(d); *De La Rosa v. Lewis Foods of 42nd St., LLC*, 124 F.Supp.3d 290, 296 (S.D.N.Y. 2015) (claim against landlord fails absent evidence that it actually made alterations).

      2.     Plaintiff Has Not Met His Burden Of Identifying A "Readily Achievable" Way Of Removing Architectural Barriers To Access

Neither of Plaintiff's two suggested methods of barrier removal is readily achievable.

As explained by Defendants in their initial moving brief, installation of a ramp at the Premises is a non-starter because: (a) the ADA would require any such ramp to be at least 27 feet

long (Borchardt Decl., ¶ 7); and (b) a 27-foot long ramp would, *inter alia*, violate New York City law, which would allow it to extend only 44 inches from the Building's facade (*Id*.).[3]

Plaintiff utterly fails to confront the legal barriers to installation of a ramp, except to assert that the ADA might conceivably permit "building a ramp with a steeper slope than the ADA standards would ordinarily permit." Opp. Br., p. 22. However, any ramp that would not violate New York City law would be extremely steep and Plaintiff himself has noted the dangers associated with such a ramp. Opp. Br., p. 6 ("Excessive slopes are dangerous because a wheelchair can roll away . . ."). Plaintiff cannot have it both ways. Moreover, as explained in Defendants' initial brief and below, Defendants have made available an alternative method of access, *i.e.*, use of an elevator, that would not involve undue risks to wheelchair users.

Plaintiff asserts that a ramp like the one in front of the adjacent H&M store can be installed in front of the Premises. However, there is no evidence that: (a) the H&M ramp was installed after the enactment of the ADA; (b) the H&M ramp would be approved for installation today, (c) the rise from the sidewalk to the H&M store entrance is the same as the rise to the Premises, and/or (d) even if the rise from the sidewalk to the two store entrances is the same, True Religion can lawfully replicate such a ramp in front of its store.[4] *See* Affidavit of Mark Jackson dated November 14, 2016.

---

[3] Plaintiff relies on *Kreisler v. Second Ave. Diner Corp.*, 2012 U.S. Dist. LEXIS 129298 (S.D.N.Y. Sept. 11, 2012) to argue that Defendants supposedly had a duty to apply to the New York Department of Buildings ("DOB") for approval of Plaintiff's proposed ramp. In *Kreisler*, Judge Sullivan held that defendants' "generalized eleventh-hour objections concerning [N.Y. City] regulations" should not prohibit construction of a ramp where "[t]he sidewalk outside of the [subject premises] could accommodate a permanent ramp that complies with ADA standards." *Id*. at *8, *25. The court therefore ordered defendants to "initiate the formal process for seeking permission to install a permanent ramp." *Id*. at *26. Unlike in *Kreisler*, Plaintiff's proposed ramp could not fit; indeed, if it complied with ADA standards, it would be 27 feet long and block traffic on Broadway. Borchardt Decl., ¶ 7.

[4] Plaintiff relies on three decisions – *Fowler v. Kanawha Valley Fine Jewelry & Loan LLC*, 2015 U.S. Dist. LEXIS 3761 (S.D. W.Va. Jan. 13, 2015); *Nat'l All. for Accessability, Inc. v. McDonald's Corp.*, 2013 U.S. Dist. LEXIS 172268 (M.D. Fla. Dec. 6, 2013) and *Wilson v. Pier 1 Imps. (US), Inc.*, 439 F. Supp. 2d 1054 (E.D. Cal. 2006)– to argue that the H&M ramp establishes that construction of a ramp at the Premises is "readily achievable." These decisions merely hold that where a particular barrier has already been removed, such removal was necessarily "readily achievable," but say nothing about removal of barriers at a ***different*** public accommodation.

Apparently aware that the recommendation of Plaintiff's purported expert cannot withstand scrutiny, Plaintiff, on his own, now offers a new alternative: installation of a portable lift. However, this new proposal suffers from the same flaw as the old one.

As explained in the accompanying Second Declaration of Tracy Borchardt dated November 10, 2016 ("2d Borchardt Decl."), a portable lift cannot be installed at 513 Broadway without violating New York City law. A lift would require: (i) a landing with guardrails at least the width of the opening of the lift along the front of the Building; and (ii) a new set of stairs leading to the new landing from the street, to enable persons not using the lift to access the Building. In this situation, the stairs would extend more than 44 inches from the facade of the Building (2d Borchardt Decl., ¶ 16), which would violate New York City law (*Id.*).

Moreover, Plaintiff has submitted no evidence that installation of a portable lift would be readily achievable. The court in *Pascuiti v. New York Yankees*, 1999 U.S. Dist. LEXIS 18736 , at *12 (S.D.N.Y. Dec. 6, 1999) described the burden of proffering evidence that a plaintiff bears:

The plaintiffs . . .have the burden of suggesting a method of removing the barrier that is "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9) (definition of "readily achievable"). … The plaintiffs in this case must consider the four factors identified in § 12181(9) and proffer evidence, including expert testimony, as to the ease and inexpensiveness of their proposed method of barrier removal . . .

(footnote omitted). *Accord Panzica v. Mas-Maz, Inc.,* 2007 U.S. Dist. LEXIS 42171, at *27-28 (E.D.N.Y. June 11, 2007) (granting defendant summary judgment where plaintiff's expert made "no attempt … to address any of the statutory factors that the court must consider in determining whether these changes are readily achievable."). Further, a non-movant cannot evade summary judgment by concocting an alternative that his expert did not support. *Canon Inc. v. Color Imaging, Inc.*, 2015 U.S. Dist. LEXIS 179445, at *83 (N.D. Ga. Sep. 11, 2015), *adopted in relevant part*, 2016 U.S. Dist. LEXIS 93092 (rejecting "a recent and unsupported concoction"

5

by the non-movant "made in an effort to stave off summary judgment" where the non-movant's expert had not supported that argument in his report or deposition).[5]

Plaintiff advances no evidence regarding, *inter alia*, where the mechanical lift would be placed and how it, along with the required landing and guardrails, could fit within the outdoor space usable under New York City law. His purported expert's report made no mention of a portable lift. Plaintiff thus has failed to meet his burden with respect to the portable lift.[6]

Plaintiff's sole basis for suggesting the use of a portable lift appears to be that another building, 597 Broadway, has received permission from the Landmarks Preservation Commission ("LPC") to install a portable lift. However, Plaintiff has provided no evidence demonstrating that the two situations are the same or that it would be easily accomplishable for 513 Broadway to make the changes that 597 Broadway will need to make.[7]

Plaintiff also asserts that "both parties agree that a platform lift could be installed as an option to provide wheelchair accessibility into the True Religion store." Opp. Br., p. 2. However:

---

[5] *See also Paros Props. LLC v. Colo. Cas. Ins. Co.*, 2015 U.S. Dist. LEXIS 116939, at *15-16 n.5 (D. Colo. Sep. 2, 2015) (rejecting a plaintiff's argument that was, *inter alia*, "clearly inconsistent with [the plaintiff's] own expert's" opinion); *Aventis Pharms., Inc. v. Barr Labs., Inc.*, 372 F. Supp. 2d 430, 440-42 (D.N.J. 2005) (same).

[6] Plaintiff asserts that the Court may lawfully consider the methods of access that he identifies himself, even though he provides little or no evidence to support such alternatives, expert or otherwise. The cases on which he relies either are irrelevant to this issue -- *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013) (plaintiff's failure to meet deadline for expert disclosure did not preclude court's consideration of assertions in plaintiff's declaration regarding measurements taken by expert in presence of plaintiff); *Harkabi v. Sandisk Corp.*, 2012 U.S. Dist. LEXIS 92674, at *1 (S.D.N.Y. June 20, 2012) (expert could testify at trial regarding specific lines of computer code not referenced in expert's eighty-six page report where source code files and methods of analysis were repeatedly described therein); *Small v. Dellis*, 1997 U.S. Dist. LEXIS 23611, at *14 n.5 (D. Md. Dec. 18, 1997) (Daubert challenge to admissibility of expert report need not be determined on motion for summary judgment) – or involved simple proposed alternatives easily within the ken of a layperson -- *Celeste v. E. Meadow Union Free Sch. Dist.*, 373 Fed. Appx. 85 (2d Cir. 2010) (plaintiff high school student requested curb cut outs and other pavement fixes to allow wheelchair access at school); *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 134 (2d Cir. 1995) (plaintiff teacher requested hiring of teacher's aide for her classroom); *Kane v. Carmel Cent. Sch. Dist.*, 2014 U.S. Dist. LEXIS 179195, at *3 (S.D.N.Y. Dec. 15, 2014) (plaintiff music teacher requested automatic doors at school and a raised podium to conduct band during class).

[7] The LPC identified a number of specific, detailed conditions present at 597 Broadway. *See* Parker Decl., Exh. 6 (noting, for example, the existence of space for "a new pedestal call station to be installed within an area of plain concrete at the sidewalk adjacent to the end of the lift"). It also identified particular modifications to be made in connection with the installation of a lift, including use of an interior portion of the premises. *Id.* (requiring, for example, that the "storefront infill be modified to allow space for the lift to be stored on the stair landing when not in use, and for the drive box system for the lift to be stored at the interior if possible.").

.1/45854-00024

(a) none of Plaintiff's citations are to a statement made by True Religion; (b) the 513 Broadway witness merely stated that if installation of a lift were required by law, 513 Broadway would not object (Parker Decl., Exh. 15, p. 56); and (c) 515 Broadway's expert testified that he did not know whether a platform lift could be installed at 513 Broadway because the scope of his work did not include investigating the issue (*Id.*, Exh. 11, p. 48). Thus, Plaintiff's assertion is baseless.

### 3. Defendants Have Complied With The ADA By Providing An Alternative Method Of Access Into The Premises

Plaintiff admits that Defendants make available an elevator as an alternative method of access to the Premises, but contends that access is denied to him because his wheelchair allegedly cannot fit through doors leading to the elevator. However: (a) Plaintiff does not identify the width of his wheelchair; (b) he admits that he never tried to enter the Premises through those doors (Range Tr., pp. 22-23); and (c) the doors, when open, leave an area nearly five-feet in width through which any wheelchair user easily can pass (Opp. Br., pp. 5-6).

Relying on the expert report of Tracy Borchardt, Plaintiff argues that "defendants' do not dispute that the New Elevator and the path of travel into and out of it are not wheelchair accessible." Opp. Br., p. 2. But Mr. Borchardt never said what Plaintiff claims. In actuality, he stated that the elevator accessible through the Second Entrance "made it possible . . . for a wheelchair bound individual to access the main level of the building." Parker Decl., Exh. 1, p. 1.

Plaintiff also contends that the elevator does not comply with ADA technical requirements and Defendants must replace it with a new one that operates manually and not automatically.[8] First, Plaintiff's position is at odds with 28 C.F.R. § 36.305(a) and 28 C.F.R. §

---

[8] Plaintiff further demands that Defendants remove the gate at the entrance to the elevator, install a self-leveling feature to level the elevator with the outside floor automatically, widen certain double-doors, reduce the slope in front of the doors leading from the sidewalk to the elevator, create four feet of clear floor space in front of both the doors leading from the elevator to the sidewalk and from the elevator to the store, and replace and relocate the door handles and locks on the doors leading both from the sidewalk to the elevator and from the elevator to the store entrance. Opp. Br., pp. 5-7, 13-14 (together with the elevator replacement, the "Proposed Renovation Project").

36.304(d)(3), which permit public accommodations to use readily achievable measures that are not compliant with ADA technical requirements, for the purpose of enabling wheelchair access, where compliance is not readily achievable. *See Orlando v. Los Alamitos Racing Ass'n*, 2015 U.S. Dist. LEXIS 9960, at *17 (C.D. Cal. Jan. 28, 2015) (granting summary judgment to defendant who provided alternative access to premises by use of elevator and holding that "Defendant cannot be held liable under the ADA for failing to implement Plaintiff's alternative method of choice when Defendant already provides an alternative method of access[]."); *Mannick v. Kaiser Found. Health Plan, Inc.*, 2006 U.S. Dist. LEXIS 38430, at *34 (N.D. Cal. June 9, 2006) (granting summary judgment where plaintiff wheelchair user failed to establish that defendant's alternative measures taken to address inaccessibility of bathrooms were discriminatory). Second, Plaintiff's Proposed Renovation Project is not "readily achievable" because it would involve enormous cost, burden and inconvenience. As detailed in the 2d Borchardt Decl., replacing the existing elevator would cost more than $500,000, involve months of work and deny the residents living in the five floors above the Premises the use of an elevator for those months.[9] Third, Plaintiff provides no proof or expert testimony – or even any explanation – showing how, consistent with 42 U.S.C. § 12181(9), the Proposed Renovation Project is "easily accomplishable" and can be "carried out without much difficulty or expense."[10]

---

[9] The remainder of the changes would be pointless assuming the elevator remains in place or result in new violations of the ADA. Because a True Religion employee must be present to operate the existing elevator, such employee also can assist with ingress and egress, and there is nothing to be gained by leaving unlocked the doors leading to the elevator, replacing the gate at the entrance of the elevator, replacing doors and door handles, and creating wheelchair landing spaces. Although Plaintiff gives short shrift to Defendants' security concerns, there is nothing unreasonable about not wanting the general public to have unfettered access to True Religion's store room or the residential areas of the Building. *Moore v. Robinson Oil Corp.*, 2012 U.S. Dist. LEXIS 80780, at *25 (N.D. Cal. June 11, 2012) (holding that defendant had no obligation to implement plaintiff's proposed alternative to make bathroom facility more accessible where "no evidence was offered [by plaintiff's expert] that [proposal] would actually be feasible. What about security, public safety, or vandalism?"). Moreover, Plaintiff's proposed change outside the Second Entrance, re-sloping the sidewalk, would result in a new non-ADA compliant feature. 2d Borchardt Decl.,¶ 12.

[10] Plaintiff's criticisms of the use of the elevator and Second Entrance appear to be not genuine. Plaintiff proposes installation of a ramp like the H&M ramp even if it could not comply with ADA technical requirements, while simultaneously arguing that use of the elevator through the Second Entrance is insufficient because of technical

.1/45854-00024

### 4. Defendants Cannot Be Liable Under The ADA Even If The Premises Are Considered Altered

Even applying the incorrect "maximum extent feasible" standard Plaintiff advocates, Plaintiff still cannot establish a violation of the ADA. As explained in Defendants' initial brief and above, installation of an ADA-compliant ramp or portable lift would not be feasible because any such ramp or lift would result in a violation of New York City law. As the court recognized in *De La Rosa v. 597 Broadway Dev. Corp.*, 2015 WL 7351540 (S.D.N.Y. Aug. 4, 2015) – a case previously cited by Defendants and ignored by Plaintiff -- the "maximum extent feasible" standard does not require using a method of barrier removal that will violate New York City law.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S CLAIMS UNDER THE NYHRL AND NYCRL

Plaintiff does not challenge Defendants' argument that he cannot establish a violation of the NYHRL and NYCRL and has thus conceded that these claims must be dismissed.

## III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S CLAIM UNDER THE NYCHRL

Plaintiff appears to agree that, under the NYCHRL, the main entrance to a building must be made accessible unless doing so creates an undue hardship *or* is architecturally infeasible.[11]

Defendants' initial brief argued that: (1) installation of a ramp is architecturally infeasible because it could not be approved by the DOB under the governing standards; and (b) a modification is architecturally infeasible if it cannot obtain agency approval under such standards. Initial Br., pp. 17-18. Plaintiff addressed neither point.

Instead, Plaintiff argues that Defendants have not established that installation of a ramp at the "main entrance" would present an undue burden. However, as Plaintiff admits (Opp. Br., pp.

---

requirements. Moreover, there is nothing discriminatory about a True Religion employee enabling wheelchair access through the Second Entrance, as such an employee must be involved whenever any guest uses that entrance.
[11] Opp. Br., p. 7 (the NYCHRL "requires public accomodations to make the entrance to a building accessible unless doing so creates an undue hardship, or is architecturally infeasible.")(internal quotation omitted) and p. 9 (same).

9

7, 9), Defendants need not establish undue burden. They have established architectural infeasibility with respect to the installation of a ramp, which is all that is required of them.[12]

Plaintiff also suggests that the NYCHRL somehow could require modifications to the Second Entrance and elevator, but Plaintiff cites no authority to support this point.

## IV. THERE IS NO BASIS FOR INJUNCTIVE RELIEF

Plaintiff asserts that the Court should enter an injunction relating to the signage and buzzer enabling wheelchair access through the Second Entrance. Preliminarily, the signage and buzzer do not violate the ADA. Contrary to Plaintiff's assertions: (a) the signs, including one posted on the Second Entrance doors, show unmistakably the handicap entrance location (Arroyo Decl., Exhs. A, B); and (b) the ADA standards Plaintiff cites do not require Defendants to alter the slope on the sidewalk near the buzzer. Moreover, as explained in Point I(E) of Defendants' initial brief, Plaintiff lacks standing to seek injunctive relief. Plaintiff testified that even though he has seen the signs and knows that he can gain entry by pushing the buzzer, he has no intention of pressing it. Range Tr., pp. 22-3, 53. Put differently, if the signage and buzzer remain exactly as they are, Plaintiff will not use them. *Id.* He thus has no plan to visit the Premises and lacks standing.[13] Further, even if Plaintiff has standing, there is no need for an injunction inasmuch as: (a) Defendants already made a firm commitment to maintain the status quo by offering to have a judgment entered that required it; and (b) Plaintiff cites nothing to show that the LPC would have any reason to request removal of the signs and buzzer in question absent entry of an injunction.[14]

## CONCLUSION

Defendants' motion should be granted and the Complaint should be dismissed.

---

[12] Plaintiff does not argue that Defendants must establish that installation of a lift is architecturally infeasible. In any event, for the reasons stated in Point I(A)(2) above, installation of a portable lift would be architecturally infeasible.
[13] Although Plaintiff asserts that he has been "deterred" from entering the Premises, there is no evidence that anything deterred him other than his own preference not to press the buzzer.
[14] The fact that LPC ordered removal of entirely different signs posted at 575 Broadway, without more, does nothing to indicate that the LPC would require removal of the signs at the Premises.

DATED:  New York, New York
    November 14, 2016

            MITCHELL SILBERBERG & KNUPP LLP

            By: <u>/s/David B. Gordon</u>
              David B. Gordon (DG 0010)
              Travis Meserve (TM 6785)
              12 East 49th Street, 30th Floor
              New York, New York 10017-1028
              Telephone:  (917) 546-7701
              Facsimile:  (917) 546-7671

              Attorneys for Defendants
              True Religion Sales, LLC, incorrectly
              named herein as True Religion Apparel
              Inc., and 513 Broadway Realty, LLC

DATED:  New York, New York
    November 14, 2016

            BRAVERMAN GREENSPUN, P.C.

            By: <u>/s/ Manu Leila Davidson</u>
              Manu Leila Davidson (MD 5119)
              110 East 42nd Street, 17th Floor
              New York, New York 10017
              Telephone:  (212) 682-2900
              Facsimile:  (212) 682-7718

              Attorneys for Defendant
              515 Broadway Corp.